IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATE OF AMERICA and the STATES OF FLORIDA and ILLINOIS *ex rel.* MAUREEN NEHLS, Plaintiffs, v. OMNICARE, INC., MORRIS ESFORMES, and PHILIP ESFORMES, Defendants. | Case No. 07 C 5777 The Honorable Amy J. St. Eve |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

*Qui tam* plaintiff Maureen Nehls ("Relator") filed a Fifth Amended Complaint ("FAC") on December 21, 2010 against defendant Omnicare, Inc. ("Omnicare") and individual defendants Morris Esformes and Philip Esformes (collectively, "Defendants"). Defendant Philip Esformes (hereinafter, "Defendant") moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendant's motion.

**FACTS**

Relator brings this *qui tam* action on behalf of the United States and the States of Illinois and Florida and alleges that Defendants violated the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.* ("IWRPA"), the Florida False Claims Act, Fla. Stat. § 68.081 *et seq.* ("Florida FCA"), and the Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.* ("ICFPA"). Relator alleges that Defendant Omnicare, in conspiracy with father and son Defendants Morris and Philip Esformes, violated the federal anti-kickback statute, 42 U.S.C. § 1320(a)-7(b)(b), when it

purchased Total Pharmacy Services, LLC ("Total Pharmacy") -- in which Defendant held a 40% ownership stake -- for $25 million on June 30, 2004. Relator alleges that Omnicare knowingly paid, and Defendant and Morris Esformes knowingly received, an illegal kickback in that transaction. Because of that illegal kickback, Relator alleges, Omnicare (via its newly-purchased Total Pharmacy) secured valuable long-term contracts with nursing homes owned or controlled by Defendant Morris Esformes. Those contracts provided Omnicare with a captive population of thousands of elderly and disabled customers for its pharmacy services business.

Through its pharmacy services business, Omnicare contracts with the federal government, the State of Illinois, and the State of Florida to provide pharmaceuticals to its customers. Pursuant to those contracts, the governments reimburse Omnicare for its services at specified rates. In order to be eligible to receive those reimbursements, Omnicare must enter into agreements with the governments and certify that it complies with certain Federal and State laws and regulations, including the federal anti-kickback statute ("AKS"). Omnicare must also certify that it complies with the AKS in order to receive reimbursement for its services. Relator specifically alleges that in Florida and Illinois, "the Medicaid claim form Omnicare submits on a regular basis for reimbursement contains a mandatory certification that the provider has complied with all laws and regulations pertaining to Medicaid, including the Anti-Kickback Statute." (R. 114, Fifth Amended Compl., ¶ 74.) Relator alleges that the Medicare program imposes the same requirements. (*Id*. at ¶ 87.) Relator alleges that Omnicare cannot obtain payments without those certifications, and that compliance with the anti-kickback statute "is a pre-requisite to, and condition of, payment by Florida and Illinois Medicaid Programs," *id*. at ¶¶ 35, 78, and the Medicare program, *id*. at ¶¶ 34, 89. Relator alleges that as a result of, and in reliance upon, those fraudulently certified claims, the Medicare program and the Illinois and

Florida Medicaid programs paid for Omnicare's provision of pharmaceuticals to the patients at Defendant Morris Esformes's nursing homes. (*Id*. at ¶¶ 80, 91, 100.) Those false certifications provide the basis for Relator's claims in this litigation.

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007); *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). Generally, a complaint need only provide a short and plain statement giving defendants fair notice of the nature and basis of each claim. Fed.R.Civ.P. 8(a)(2). Fraud allegations, however, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to plead with particularity. *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005) ( "The FCA is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.") (citing *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003) (Rule 9(b) applies "because the False Claims Act condemns fraud but not negligent errors or omissions.")). This means that the complaint must allege "the who, what, when, where and how" of the alleged fraud. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)); *Gross*, 415 F.3d at 605 (quoting *United States ex rel. Garst v. Lockheed-Martin*

*Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)). To ensure that the courts and litigants do not "erroneously take an overly rigidly view of the formulation, the requisite information ... may vary on the facts of a given case." *Pirelli*, 631 F.3d at 442. "To say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement)." *Lusby*, 570 F.3d at 855.

## ANALYSIS

Defendant does not dispute that Relator has properly alleged that he received an illegal kickback from Omnicare.[1] Rather, Defendant moves to dismiss the FAC pursuant to Rule 12(b)(6) on the grounds that, as a matter of law, the alleged false certifications are not material to Medicare-based claims. Defendant also argues that Relator fails to meet the heightened pleading standard of Rule 9(b) because: (i) Relator does not properly allege that the false certifications were material to the federal or state governments' decisions to pay the allegedly false claims, and (ii) Count IV does not properly plead a violation of the Illinois Insurance Claims Fraud Protection Act. Finally, Defendant argues that Count IV is time-barred in whole or in part. The Court addresses Defendant's arguments in turn.

### I. Relator Satisfactorily Pleads a False Certification Claim

The FCA imposes liability against any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to get a payment from the government. 31 U.S.C. § 3729(a)(1). An FCA claim under § 3729(a)(1) has three essential elements: (1) the defendant made a statement in order to receive money from the government, (2) the statement

---

[1] Defendant asserts, "there is a real issue as to whether the price paid for this single transaction could qualify as a kickback." (R. 53, Def.'s Mem. of Law at 2.) Although Defendant does not press this point in his briefs, the Court notes that resolution of this question of fact is not appropriate on a motion to dismiss.

was false, and (3) the defendant knew it was false. 31 U.S.C. § 3729(a)(1); *Gross*, 415 F.3d at 604. An FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements also requires that the certification of compliance be a condition of or prerequisite to government payment. *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 858 (7th Cir. 2006); *Gross*, 415 F.3d at 604 (citations omitted).

Defendant argues that for Relator's claims to succeed, Relator must allege that compliance with the anti-kickback statute is necessary for payment. In the alternative, Defendant contends that where the express language of the certification does not mention payment, Relator may be able to plead that a statute or regulation makes payment conditional on compliance. *See* R. 53, Def.'s Mem. in Support at 5. In so arguing, Defendant creates a constricted definition of materiality that the Seventh Circuit has flatly rejected. *See United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008). In *Rogan*, the defendant argued that the alleged statutory violations (i.e. defendant's failure to disclose the kickbacks) that the government pleaded in its complaint were not material to the government's decision to pay the claims. As the Seventh Circuit noted, however, the accepted definition of materiality provides that "a statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Rogan*, 517 F.3d 449, 452 (7th Cir. 2008) (citing (*Neder v. United States*, 527 U.S. 1, 16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quotations omitted)). The Seventh Circuit found that "information that a hospital has purchased patients by paying kickbacks has a good probability of affecting the decision." *Id*. It further explained:

> The United States is entitled to guard the public fisc against schemes designed to take advantage of overworked, harried, or inattentive disbursing officers; the False Claims Act does this by insisting that persons who send bills to the Treasury tell the truth. As Justice Holmes put it, "[m]en must turn square corners when they deal with the government."

*Id.* (quoting *Rock Island, Arkansas & Louisiana R.R. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920)).

Applying *Rogan* to the facts in this case, Relator states a claim upon which relief can be granted. Taking Relator's factual allegations as true and viewing the facts in the light most favorable to Relator, as the Court must do when considering a Rule 12(b)(6) motion, Relator's allegations that Defendants devised an illegal kickback scheme to purchase patients and, subsequently, falsely certified their compliance with the anti-kickback statute in order to obtain reimbursement from the federal and state governments gives rise to FCA liability. Several courts in this Circuit have similarly found. *See, e.g., Mason v. Medline*, 731 F.Supp.2d 730, 739 (N.D. Ill. 2010) ("Certifications are material to government reimbursement under Medicare."); *United States v. Rogan*, 459 F.Supp.2d 692, 724 (N.D. Ill 2006) ("[the anti-kickback statute] clearly provide[s] that compliance with [its] terms is a condition of payment under the Medicaid programs. The United States would not have paid the claims if it had known the claims were false."); *United States ex rel. Bidani v. Lewis*, 264 F.Supp2d 612, 616 (N.D. Ill. 2003) ("Compliance with the AKS is thus central to the reimbursement plan of Medicare. To state otherwise would be to allow participation and reimbursement for supplies purchased illegally only because the claimant had the luck of not being caught and convicted in the first place.").

Defendant does not cite Seventh Circuit case law in his discussion of this argument in his opening brief, and he only perfunctorily addresses *Rogan* in his reply brief. In a single sentence, Defendant dismisses *Rogan* as "inapplicable" because in that case, the government filed the FCA claim, whereas here, a private party (Relator) initiated the litigation. (R. 73, Def.'s Reply at 5.) The Court is, however, bound to follow Seventh Circuit precedent. *See Bingham v. New Berlin*

6

*Sch. Dist.*, 550 F.3d 601, 605 (7th Cir. 2008) (citing *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent [] must be followed by the lower federal courts.")). Instead, Defendant relies heavily on a Tenth Circuit case, *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211 (10th Cir. 2008), to argue that false certifications regarding violations of the anti-kickback statute do not give rise to FCA liability as a matter of law. As Relator correctly points out, however, the defendant in *Conner* did not "contest[ ] as a legal matter Conner's assertion that a violation of the Anti-kickback statute could serve as a predicate for FCA liability." *Id.* at 1223. Accordingly, the *Conner* court did not address "whether violations of the Anti-kickback statute are actionable through the FCA." *Id.* at 1223 n. 9. In fact, the *Conner* court explicitly noted that other courts that have considered the issue have held that falsely certifying compliance with the anti-kickback statute does give rise to FCA liability. *Id.* at 1223 n. 8.

Defendant also relies on a Ninth Circuit case, *United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996), which is both non-binding and too factually dissimilar to provide helpful guidance. Finally, Defendant cites *United States ex rel. Kennedy v. Aventis Pharm., Inc.*, No. 03 C 2570, 2008 WL 5211021 (N.D. Ill. Dec. 10, 2008) (Kennelly, J.). Defendant misleadingly quotes the *Kennedy* court as "noting that FCA liability does not arise from a false certification involving a matter that is a condition of program eligibility, not a condition of payment of a claim." (R. 53, Def.'s Reply at 3.) In fact, the *Kennedy* court did <u>not</u> reach a conclusion on this point. *Kennedy*, 610 F.Supp.2d at 947. Had Defendant started the *Kennedy* quote a few words earlier, it would have more accurately stated that "[the Seventh Circuit's holding in *Gross*] *suggests* that making a false certification involving a matter that is a condition

7

of program eligibility, not a condition of payment of a claim, does not give rise to FCA liability. (internal citation omitted) But because relators have not identified any express false certification, *the Court need not decide this point definitively*." *Id.* (emphasis added).

In light of the Seventh Circuit's holding in *Rogan*, which is binding on the Court, and given Defendant's failure to present a compelling argument to the contrary, the Court denies Defendant's motion to dismiss the FAC on the grounds that Relator's claim fails as a matter of law. Furthermore, the Court rejects Defendant's contention that Relator fails to adequately plead that the certifications were pre-conditions to payment. (R. 53, Def.'s Reply at 4.) As described in the fact section, *supra*, Relator makes those specific allegations in Paragraphs 34, 35, 72, 73, 78, 79, 80, 81, 89, 91. Defendant cites no support for its contention that Relator's "failure to allege that a truthful certification is necessary in order to receive payment" is grounds for dismissal. Again, Relator need not prove her case at this point; in accordance with Rule 9(b), she has satisfactorily pleaded allegations of fraud. *Lusby*, 570 F.3d at 855; *Medline*, 731 F.Supp.2d at 739.

## II. Illinois Insurance Claims Fraud Prevention Act

Defendant argues two grounds for dismissal of Relator's ICFPA claim. First, Defendant argues that Relator failed to plead the claim in accordance with Rule 9(b). Second, Defendant contends that the applicable statute of limitations bars Relator from bringing this claim.

### A. Relator pleads sufficient particularity in compliance with Rule 9(b)

Under the ICFPA, it is unlawful to "knowingly offer or pay any remuneration directly or indirectly, in cash or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer. 740 ILCS 92/5(a). Relator's lawsuit describes, in detail,

8

the allegedly fraudulent transaction between Omnicare, Defendant, and Morris Esformes. (FAC, ¶¶ 36-66.) Relator pleads her allegations as an "original source" by virtue of her position and responsibilities at Total Pharmacy prior to and following the allegedly fraudulent transaction. (*Id*. at ¶ 41.) Relator alleges that as a result of that fraudulent transaction – and the illegal kickback contained therein – Omnicare and the Esformed-controlled nursing homes submitted "claims . . . to Illinois insurance companies." (*Id*. at ¶¶ 84, 95.) Relator concedes that she "cannot at this time identify all of the false claims for payment [to private insurers] that were caused by Defendants' conduct," explaining, "[t]he false or fraudulent claims were presented by multiple separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession." (*Id*. at ¶ 140.) Under Seventh Circuit law, it is not "essential for a relator to produce invoices (and accompanying representations) at the outset of the suit." *Lusby*, 570 F.3d at 854. "[W]hile it is essential to show a false statement, much knowledge is inferential … and the inference that [relator] proposes is a plausible one." *Id*. Given the nature of Relator's other claims – all grounded in false claims submitted to the government arising out of a transaction involving an illegal kickback – it is plausible that Omnicare and the Esformes-controlled nursing homes would have submitted claims to private insurers as well as to the federal and state health programs. Under Seventh Circuit law, it would be erroneous and "overly rigid" to penalize Relator under Rule 9(b) for her inability to corroborate her claim at this juncture. *Pirelli*, 631 F.3d at 444 (acknowledging that "[t]he *qui tam* relator surely lacked access to reimbursement data from third-party payors that would have allowed him to provide additional circumstances corroborating the existence of fraud.").

Defendant cites no controlling case law to support his argument for dismissal. In the four paragraphs he devotes to this argument – two in his opening brief and two in his reply brief – Defendant cites only one unpublished, non-controlling case from the District of Massachusetts. Recognizing the relative paucity of Relator's allegations vis a vis Count IV, the Court nonetheless finds that the FAC contains "enough factual matter (taken as true)" to provide Defendant the minimum notice of the Relator's claim. *In re Ocwen Loan Servicing, LLC*, 491 F.3d 638, 649 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Accordingly, the Court denies Defendant's motion to dismiss Count IV for failure to plead a claim under Rule 9(b).

### B. ICFPA claim relates back to Relator's initial complaint

Lastly, Defendant argues that Count IV is time-barred under the statute of limitations in the ICFPA. Defendant contends that the ICFPA provides a three-year statute of limitations, accruing on the date the claim is discovered, in which to bring the claim. 740 ILCS 92/45. Since the claim was discovered in June 2004, when Relator alleges the illegal kickback to have occurred, Defendant contends that Relator untimely amended her Fourth Amended Complaint in July 2010 when she added the claim. Relator makes two arguments to support the timeliness of her claim: first, Relator contends that Defendant misreads the statute of limitations and that it gives Relator *eight* years in which to bring the claim; and second, that in accordance with Rule 15(c), the claim relates back to Relator's original Complaint, filed in 2006. Because the second issue is dispositive, the Court need not reach the first issue.

"Rule 15(c)(1)(B) … provides that an amended pleading relates back to the date of the original pleading where 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading.'" *Arreola v.*

*Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (internal citation omitted). The purpose of the relation back doctrine is to "balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, -- U.S. -- ,130 S.Ct. 2485, 2494, 177 L.Ed.2d 48 (2010) (citing Advisory Committee's 1966 Notes 122; 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed. 2009). The Rule governing relation back of amendments is based on the idea that party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from the statute of limitations than one who is informed of precise legal description of rights sought to be enforced. *Solo Cup Co. v. Paper Machinery Corp.*, 359 F.2d 754 (7th Cir. 1966). If the original pleading gives fair notice of the general fact situation out of which Relator's claim arises, Defendant will not be deprived of any protection that the state statute of limitation was designed to afford him. *Id*.

Defendant does not dispute that Relator's ICFPA claim arises out of the same "conduct, transaction, or occurrence" that Relator set out in her original complaint. Rather, Defendant asserts that the relation back doctrine does not apply in False Claims Act cases or in cases where the initial complaint is filed under seal. As the parties note, this is a question of first impression in this Circuit. The courts that have considered this question are divided.

The False Claims Act permits a private citizen to bring a civil action on her own behalf and on behalf of the United States for violations of the Act. 31 U.S.C. § 3170(b). By law, the complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. 31 U.S.C. § 3170(b)(2). The Government may investigate the claims and elect to intervene. Plaintiff/Relator cannot move forward with the

11

complaint until the government has determined whether or not to intervene in the lawsuit. The law effectively places plaintiffs/relators at the mercy of the government. In this case, the government ultimately declined to intervene. The Court unsealed the Third Amended Complaint in January 2010 and Relator served Defendants with the Fourth Amended Complaint on July 8, 2010. Relator included a claim for violating of the ICFPA (Count IV) for the first time in the Fourth Amended Complaint. Defendant now wishes to bar that claim as untimely because it was filed six years after Relator discovered the events giving rise to the claim.

Defendant cites three non-controlling cases for his proposition that the relation back doctrine does not apply to *qui tam* cases. All three cases, arising outside the Seventh Circuit, involve situations where the government sought to intervene in the litigation and to relate its claims back to the relator's original complaint. This is not the procedural posture of the present matter. Moreover, in light of the Seventh Circuit's general interpretation and application of Rule 15(c), the Court does not find Defendant's arguments persuasive.

Rule 15(c)(1)(B) carefully circumscribes the claims that can – and cannot – be related back to a plaintiff's initial complaint. Defendant submits two cases involving Rule 15(c)(1)(C), the rule governing the addition of *parties* to a lawsuit. *See* R. 73, Def.'s Reply at 8. Although Defendants suggests that the Court should adopt those cases' reasoning, Defendant is undoubtedly aware that the addition of parties to a lawsuit requires considerably stricter rules than the addition of claims for which the present defendant already has notice. *See* Fed.R.Civ.P. 15(c)(1)(C). Relator proffers several cases supporting the application of Rule 15(c)(1)(B) to *qui tam* cases. *See United States ex rel. Repko v. Guthrie Clinic, P.C.*, 557 F.Supp.2d 522, 530 (M.D. Penn. 2008) (new claims in relator's amended complaint relate back to original under seal complaint under Rule 15(c)(1)(B)); *United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568

12

F.Supp.2d 1135, 1141 (C.D. Cal. 2008) (common law claims in government's complaint-in-intervention related back to relator's initial complaint, which was under seal for five years); *United States ex rel. Purcell v. MWI Corp.*, 254 F.Supp.2d 69, 76 (D.D.C. 2003); *United States ex rel. Campbell v. Lockheed Martin Corp.*, 282 F.Supp.2d 1324, 1336 (M.D. Fla. 2003). Given the fact that the False Claims Act statute subjects *qui tam* relators to the government's pace and timing (thus preventing the possibility of dilatory motives for delays), and in light of the fact that applying Rule 15(c)(1)(B)'s requirement that the new claims arise out of the "conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading" would impose no additional prejudice to defendant, the Court finds that Relator's claim under the ICFPA relates back to the date she filed the initial Complaint in this case. Thus, the claim is not time-barred and Defendant's motion to dismiss on that basis is denied.

## CONCLUSION

For the reasons stated above, the Court denies Defendant Philip Esformes's Motion to Dismiss Relator's Complaint.

**Date:** March 21, 2011

                        **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**